IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LEROY L. SMITH, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civil Action No. 22-544-GBW |
| | : | |
| ROBERT MAY, Warden, and ATTORNEY GENERAL OF THE STATE OF DELAWARE, | : : : | |
| | : | |
| Respondents. | : | |

### MEMORANDUM OPINION

Leroy L. Smith. *Pro se* Petitioner.

October \_\_11\_\_, 2022
Wilmington, Delaware

Williams, District Judge:

Pending before the Court is a Petition For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Leroy L. Smith ("Petitioner"). (D.I. 1) For the reasons discussed, Petitioner is ordered to show cause why the instant Petition should not be dismissed as an unauthorized second or successive petition and for being time-barred.

## I. BACKGROUND

The following background is taken verbatim from *Smith v. Holden*, 2014 WL 4058789, at *1-2 (D. Del. Aug. 14, 2014):

> ### A. 1969 Crime
>
> In 1969, Petitioner was convicted of assault with intent to commit rape. Although he was sentenced to four years of incarceration, Petitioner was released less than two years into his sentence on May 24, 1971. He never reported to his probation officer and disappeared.
>
> ### B. 1971 Crime
>
> On July 17, 1971, nineteen year old B.J. was alone in her apartment. Petitioner, who was unknown to her, forced his way into the apartment and raped her. B.J. delayed reporting the offense for two days because Petitioner threatened to kill her if she reported it to the police. Petitioner later said of the crime: "My sister lived next door to this girl. I forced my way into her apartment. I was drinking and I don't remember too much. I don't remember what I did." When Petitioner committed this rape, he was still on parole from his 1969 conviction for assault with intent to commit rape.

In 1972, Petitioner was convicted of raping B.J. and sentenced to life imprisonment. The Delaware Supreme Court reversed that decision in 1974. Thereafter, Petitioner entered a plea to the lesser offense of assault with intent to commit rape. He was sentenced to ten years. Midway through his sentence, Petitioner was conditionally released. Five months after his conditional release was granted, Petitioner committed the 1980 crimes described below.

**C. 1980 Crimes**

During the late afternoon on Wednesday, March 19, 1980, sixteen year-old S.M. was walking in the area of Third and Union Streets in Wilmington. Petitioner approached her and introduced himself with a phony name. He asked S.M. if she wanted to smoke some marijuana but she refused his offer and kept walking until she entered a nearby school. A short while later, when she was leaving the school, Petitioner grabbed S.M. She struggled to free herself. Petitioner began choking her, told her he had a gun, and that he would kill her if she did not do as he asked. Petitioner forced S.M. to some neighboring garages and told her to pull down her pants so that he could look at her naked body. At this point, a male friend of S.M. happened upon the two and eventually scared Petitioner away. The friend went to a nearby church to get help. The police were called and the crime was reported.

During this same time-frame in March 1980, twenty-three year old R.L. was a female taxicab driver working for the Diamond Cab Company. At approximately 9:30 p.m. on Friday, March 21, 1980, she had just dropped off a rider at Lancaster Avenue and Ford Avenue when Petitioner approached her. Petitioner told R.L. that he had to get to work and wanted her to take him there. R.L. told

2

Petitioner that she was scheduled to pick up another fare but he insisted that he wanted her to drive him to his destination. As Petitioner spoke to R.L., she realized from the odor on his breath that he had been drinking. R.L. tried to use his drinking as an excuse for rejecting his fare, but Petitioner and his then-present friend cajoled her into driving Petitioner. Petitioner entered the cab and gave R.L. an address as his friend walked away.

When they reached the location, Petitioner did not get out. He placed a hard object in R.L.'s right side, told her to continue to drive, and directed her to the foot of East Seventh Street in Wilmington. Once at that location, Petitioner forced R.L. to have sexual intercourse with him. When he finished, Petitioner told R.L. to drive to Eighth and Walnut Streets, where he got out of the cab. Before leaving, however, Petitioner threatened to kill R.L. if she told anyone what he had done to her. R.L. drove back to the cab company, reported the rape, gave the police Petitioner's description, and later identified him in a photographic line-up. Petitioner was apprehended shortly after the crime while he was walking in Wilmington's East Side. Petitioner was still on parole from the 1974 sentencing when he committed these two offenses.

### D. Procedural Background

On March 22, 1980, Petitioner was arrested for, and subsequently indicted on, *inter alia*, charges of first degree rape and first degree kidnapping as a result of his actions on March 19 and March 21. Petitioner pled guilty to first degree rape and second degree kidnapping. On September 26, 1981, the Superior Court sentenced him to life in prison with eligibility for probation or parole, plus an additional thirty years imprisonment and the remainder of his previously paroled sentence. Petitioner filed an application to withdraw his guilty plea, which the Superior

3

> Court denied. The Delaware Supreme Court affirmed that decision.
>
> In July 1998, Petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), which the Superior Court denied as time-barred under Rule 61(i)(1).
>
> Petitioner filed applications for parole in 1996, 2000, 2004, and 2009. The Board of Parole denied all four of his applications.

*Id.*

The Delaware Board of Parole denied Petitioner's most recent parole application on August 22, 2018. (*See* D.I. 1 at 7); *see also Smith v. Henderson*, 2021 WL 4593385, at *1 (Del. Super. Ct. Oct. 5, 2021). On May 15, 2019, Petitioner filed in the Delaware Superior Court a petition for a writ of mandamus, asking the Superior Court to direct the Board of Parole to "refrain from denying [him] parole based on 'non-changeable issues' and to promptly give him a 'rehearing of the August 21, 2018 hearing.'" *Id.* The Superior Court dismissed the petition for a writ of mandamus in October 2021, explaining that "[m]andamus will not lie to review the Board of Parole proceedings due to the discretionary nature of the Board's actions." *Id.* at *1. When dismissing Petitioner's mandamus request, the Superior Court provided the following background information:

4

> Since 1980, [Petitioner] has been serving sentences of life with the possibility of parole for rape in the first degree and 30 years for kidnapping in the second degree. [Petitioner] has applied for parole on these charges unsuccessfully a number of times, most recently on August 22, 2018. He is ineligible to apply again for 60 months from that date. [Petitioner] alleges that he has participated in a variety of self-help programs over the last 20 years or so and now is being denied parole solely on the basis of the nature of his offenses, something that will never change.

*Id.* at *1. Petitioner appealed the Superior Court's decision, but the Delaware Supreme Court dismissed the appeal after Petitioner failed to respond to its notice to show cause why he failed to file a timely appeal. *See Smith v. Henderson*, 272 A.3d 1163 (Table), 2022 WL 470804, at *1 (Del. Feb. 15, 2022).

In April 2022, Petitioner filed the Petition presently pending before the Court. (D.I. 1) Petitioner asserts that he has appeared before the Board of Parole "on several occasions" since 2013, and his parole applications have been denied with stipulations that he must complete specific programs, with the most recent being a "sex offender program" in 2018 lasting two years. (D.I. 1 at 7) Petitioner contends that the Board violated his rights to due process and equal protection by arbitrarily denying his applications, because the denials were based on "issues which will never change." (D.I. 1 at 5-8)

5

## II.  GOVERNING LEGAL PRINCIPLES

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see Woodford*, 538 U.S. at 206.

### A. Second or Successive Gatekeeping Mechanism

AEDPA "created a statutory 'gatekeeping mechanism' for second or successive habeas petitions." *In re Hoffner*, 870 F.3d 301, 306 (3d Cir. 2017). Pursuant to 28 U.S.C. § 2244(b)(3)(A), a petitioner must seek authorization from the appropriate court of appeals before filing a second or successive habeas petition in a district court. *See Burton v. Stewart*, 549 U.S. 147, 152 (2007); Rule 9, 28 U.S.C. foll. § 2254. Notably, a petition for habeas relief is not considered to

6

be "second or successive simply because it follows an earlier federal petition." *Benchoff v. Colleran*, 404 F.3d 812, 817 (3d Cir. 2005). Rather, a habeas petition is classified as second or successive within the meaning of 28 U.S.C. § 2244 if a prior petition has been decided on the merits, the prior and new petitions challenge the same conviction, and the new petition asserts a claim that was, of could have been, raised in a prior habeas petition. *See Benchoff*, 404 F.3d at 817; *In re Olabode*, 325 F.3d 166, 169-73 (3d Cir. 2003). If a habeas petitioner erroneously files a second or successive habeas petition "in a district court without the permission of a court of appeals, the district court's only option is to dismiss the petition or transfer it to the court of appeals pursuant to 28 U.S.C. § 1631." *Robinson v. Johnson*, 313 F.3d 128, 139 (3d Cir. 2002).

## B. Statute of Limitations

AEDPA imposes a one-year period of limitation on the filing of habeas petitions and effectively precludes petitioners from filing a second or subsequent habeas application except in the most unusual of circumstances. *See* 28 U.S.C. § 2244(b); 28 U.S.C. § 2244(d)(1); *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999); *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000). When a habeas petition challenges the denial of parole, AEDPA's one-year limitations period runs from the date of the parole denial. *See DeFoy v. McCullough*, 301 F. App'x 177, 180

(3d Cir. 2008) (reiterating that AEDPA's one-year limitations period applies to habeas petitions challenging the denial of parole); *see also Fernandez v. Estock*, 2020 WL 8674090, at *6 (E.D. Pa. Aug. 26, 2020) (explaining that a habeas petition challenging the denial of parole must be filed within one year after the denial). AEDPA's limitations period is subject to statutory and equitable tolling. *See Holland v. Florida*, 560 U.S. 631 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling). A petitioner may also be excused from failing to comply with the limitations period by making a gateway showing of actual innocence. *See Wallace v. Mahanoy*, 2 F. 4th 133, 151 (3d Cir. 2021).

## III. DISCUSSION

### A. Unauthorized Second or Successive Petition

In the instant Petition, Petitioner explains that he has appeared before the Board of Parole several times since June 2013, and the Board denied all of his requests to be released on parole based on stipulations to complete specific programs. (D.I. 1 at 7) Petitioner contends that the Board's August 2018 denial of his most recent request to be released on parole violated his due process rights because the Board did not suggest any specific "mental health, vocational, or educational programming." (D.I. 1 at 8) According to Petitioner, the Board's

8

decision was "completely arbitrary [and] divorced [from] any valid reasons. The denial [was] based on issues which will never change." (*Id.*)

Petitioner's federal habeas petition that was denied in 2014 challenged the Board of Parole's denial of his fourth request for parole. In that petition, Petitioner argued that the Board violated his right to substantive due process because "the factors articulated by the Board [were] not reasonably or rationally related to effective treatment, and the Board should not consider those factors because they [were] unchanging." (*See Smith v. Holden*, Civ. A. No. 11-288-LPS, D.I. 25 at 6) Judge Stark denied Petitioner's due process challenge to the denial of his parole application as meritless. *Id.*

The foregoing comparison demonstrates that Petitioner's current Petition raises the same argument regarding the Board of Parole's 2018 denial of his most recent parole application that Petitioner presented in his first petition when challenging the denial of his 2009 parole application. Judge Stark denied as meritless Petitioner's first habeas challenge regarding the denial of parole. Given these circumstances, the Court concludes that the instant Petition constitutes a second or successive habeas request under 28 U.S.C. § 2244. *See e.g., Benchoff*, 404 F.3d at 814 (where the Third Circuit found that because two of petitioner's three parole denials occurred before the petitioner filed his first petition

9

challenging his underlying conviction, the petitioner could have raised the parole claim in that petition, and the instant petition was therefore second or successive); *Long v. Penn. Bd. Probation and Parole*, 2017 WL 3412629, at *2-3 (E.D. Pa. Aug. 9, 2017) (dismissing as second or successive a petition challenging the Parole Board's most recent denial of Long's parole on two of the same constitutional bases that he asserted in his previous federal habeas petitions).

Petitioner does not allege, and the record does not indicate, that the Third Circuit Court of Appeals authorized the filing of the instant second or successive habeas Petition. Nevertheless, Petitioner will be provided an opportunity to show cause why his Petition should not be dismissed for lack of jurisdiction as an unauthorized second or successive habeas petition.

### B. Untimely Petition

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the motion is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000). The limitations period is also tolled for the time during which an appeal from a post-conviction decision could be filed even if the appeal is not eventually filed. *Id.* at 424. The limitations period,

however, is not tolled for the ninety-day period during which a petitioner may file a petition for certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Att'y of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

In this case, the limitations clock started to run on August 23, 2018, and ran for 265 days until Petitioner filed his petition for writ of mandamus on May 15, 2019. *See Wilson v. Beard*, 426 F.3d 653 (3d Cir. 2005) (holding that Federal Rule of Civil Procedure 6(a) applies to federal habeas petitions). The petition for writ of mandamus statutorily tolled the limitations period from May 16, 2019 through November 5, 2021, which includes the thirty-day period Petitioner had to appeal the Superior Court's October 5, 2021 denial of his mandamus petition.[1] *See* § 2244(d)(2). When the limitations clock started to run again on November 6, 2021, it ran the remaining 100 days without interruption until the limitations period expired on February 14, 2022. Petitioner filed the instant Petition in April 2022.

---

[1] Petitioner's untimely appeal only tolled the time during which Petitioner could have sought appellate review because the appeal was not "properly filed" for purposes of § 2244(d)(2). *See Swartz*, 204 F.3d at 423 n.6.

11

Consequently, the only way for the Petition to be deemed timely filed is if equitable tolling applies.[2]

Equitable tolling is only appropriate in rare circumstances when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649-50. With respect to the diligence inquiry, equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *Id.* at 651-52. As for the extraordinary circumstance requirement, "the relevant inquiry is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to meeting AEDPA's one-year deadline." *Pabon v. Mahanoy*, 654 F.3d 385, 401 (3d Cir. 2011). An extraordinary circumstance will only warrant equitable tolling if there is "a causal connection, or nexus, between the extraordinary circumstance [] and the petitioner's failure to file a timely federal petition." *Ross v. Varano*, 712 F.3d 784, 803 (3d Cir. 2013). Specifically, "if the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation

---

[2]Given the history of this case, it appears that Petitioner cannot assert a gateway claim of "actual innocence" as a method for excusing his untimely filing.

12

between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Brown v. Shannon,* 322 F.3d 768, 773 (3d Cir.2003). The burden is on the petitioner to prove that he has been reasonably diligent in pursuing his rights. *See Urcinoli v. Cathel,* 546 F.3d 269, 277 (3d Cir.2008).

Petitioner does not address the issue of timeliness. Nevertheless, in the interest of justice, Petitioner shall be given an opportunity to show cause why his Petition should not dismissed as untimely under 28 U.S.C. § 2244(d)(1). In his response to this Memorandum Opinion, Petitioner shall state with specificity any facts that may entitle him to equitable tolling of the statute of limitations and why his habeas Petition should not be dismissed as time-barred. An appropriate Order follows.

## IV. CONCLUSION

For the reasons set forth above, the Court has concluded that the instant Petition is both an unauthorized second/successive habeas petition and untimely. Accordingly, Petitioner shall show cause why his Petition should not be dismissed for lack of jurisdiction as an unauthorized second/successive § 2254 petition and for being time-barred. A separate Order will be entered.